FILED

August 31, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:20 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| Brandon Taylor, | ) Docket No.: 2015-02-0088 |
|     Employee, | ) |
| v. | ) State File No.: 28018-2015 |
| | ) |
| TEC Industrial, | ) Date of Injury: March 10, 2015 |
|     Employer, | ) |
| And | ) Judge: Brian K. Addington |
| | ) |
| ESIS-Ace USA, | ) |
|     Insurance Carrier. | ) |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on August 20, 2015, upon the Request for Expedited Hearing filed by Brandon Taylor (Mr. Taylor), the Employee, on July 8, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, TEC Industrial (TEC), is obligated to provide medical benefits to Mr. Taylor. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Taylor is not entitled to the requested benefits.

## ANALYSIS

### Issues

1. *Whether Mr. Taylor is entitled to medical benefits for his alleged work injury of March 10, 2015.*
2. *Whether Mr. Taylor sustained an injury that arose primarily out of and in the course and scope of employment with TEC.*
3. *Whether Mr. Taylor's injury was idiopathic in nature.*

1

4. *Whether Mr. Taylor suffered from a pre-existing condition that was aggravated by a work-related injury.*
5. *Whether Mr. Taylor sustained an injury in the course of employment with TEC.*
6. *Whether the panel of physicians provided by TEC was in compliance with the law.*
7. *Whether Mr. Taylor is entitled to another panel of physicians in compliance with the law.*
8. *Whether TEC is obligated to pay for any past medical expenses and/or mileage expense.*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Collective medical records;
2. Affidavits of Brandon Taylor, dated April 21, 2015, and June 1, 2015; and,
3. Form C-42 panel selection of Dr. Sanjeev Kakker.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), April 14, 2015
- TEC's Response to PBD, April 30, 2015
- Dispute Certification Notice (DCN), May 29, 2015
- Request for Expedited Hearing (REH), July 8, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Mr. Taylor
- Michael Love-Safety Technician
- Shannon Salts-Safety Director.

## History of Claim

Mr. Taylor worked for TEC as an iron worker, when on March 10, 2015, he slipped and fell while climbing out of a manhole, and injured his right knee. (Ex. 2 at 3.) Mr. Taylor reported his injury to his foreman, Jimmy Berry. *Id*. Mr. Berry notified TEC Safety Technician, Michael Love, who accompanied Mr. Taylor to the office of TEC's Safety Director, Shannon Salts, to discuss the incident. On Mr. Salts' instruction, Mr. Taylor reported to TEC's on-site medical provider, Nurse Linda Hensley. *Id.*

2

Nurse Hensley examined Mr. Taylor's right knee and recommended over-the-counter ibuprofen and naproxen. *Id.* She instructed Mr. Taylor to "take it easy" at work. He returned to work that day. The next day, March 11, 2015, Mr. Taylor experienced continued right-knee pain. *Id.* He returned to Nurse Hensley and received similar treatment. *Id.* TEC did not offer Mr. Taylor a panel of physicians. (Ex. 2 at 1.) Mr. Taylor testified he did not know he was entitled to a physician panel.

Also on March 11, 2015, Mr. Taylor presented at Watauga Orthopedics for evaluation of his right knee. (Ex. 1 at 23.) He charged the visit to his personal health insurance. *Id.* Of note, the provider recorded the date of injury as March 9, 2015. Mr. Taylor informed the provider that, "he fell off of a 4-foot drop and landed on his knee and hyperextended it. [He] states he thought it was fine, but the pain is now getting worse." *Id.* The provider recorded that the injury was not work-related. (Ex. 1 at 24.) At the in-person hearing, the parties stipulated all of the records from Watauga Orthopedics record that Mr. Taylor's condition was not work-related.

The physician at Watauga Orthopedics ordered right-knee x-rays, the results of which were within normal limits. *Id.* The provider diagnosed Mr. Taylor with "knee pain," adding that, "Based on patient's physical exam, x-rays, and history, possible lateral meniscus [tear]. Will schedule patient for MRI. Patient will follow-up post-MRI with Dr. [Todd] Fowler." *Id.*

According to Mr. Taylor's testimony, on March 12, 2015, he informed his superiors his right-knee pain persisted, and he requested a return to TEC's on-site medical provider. TEC obliged. During the visit, Mr. Taylor saw two nurse practitioners, who advised he should return in "6-8 weeks," in order to allow an opportunity for the healing process to continue. TEC did not provide him with a panel of physicians. When asked why he did not provide a panel to Mr. Taylor, Mr. Salts stated, "it must have slipped."

Mr. Taylor underwent the right-knee MRI on March 18, 2015. (Ex. 1 at 22.) Mr. Taylor only missed work in order to attend medical appointments. He stated during the hearing he did not miss work due to disabling knee pain. Mr. Taylor also acknowledged TEC altered his job duties so he would not put undue stress on his injured knee. Mr. Taylor acknowledged Mr. Berry, Mr. Love, and Mr. Salts all followed -up with him regularly to see how his knee fared. Indeed, Mr. Salts testified he instructed Mr. Berry and Mr. Love to check on Mr. Taylor's knee condition every day. However, Mr. Taylor admitted he did not inform his superiors at TEC of his treatment at Watauga. Mr. Salts testified that, when he asked Mr. Taylor if he required any other treatment apart from on-site medical, Mr. Taylor replied, "No."

Watauga Nurse Practitioner (NP) Everett Baker examined Mr. Taylor on March

3

27, 2015. (Ex. 1 at 16.) NP Baker noted that Mr. Taylor's knee pain was "worsening," and he had been "wearing a patella stabilizer." *Id*. NP Baker diagnosed Mr. Taylor with chondromalacia of the patella and patellar tendonitis. *Id*. He prescribed Meloxicam and ordered physical therapy with instructions to follow- up with Dr. Fowler after completing therapy. *Id*.

In the meantime, Mr. Taylor filed a PBD with the Court on April 14, 2015, requesting medical benefits. The Mediating Specialist assigned to Mr. Taylor's case contacted TEC, which promptly provided Mr. Taylor with a panel of physicians. (Ex. 3.) Mr. Taylor selected an occupational medicine specialist, Dr. Sanjeev Kakkar, on April 16, 2015. *Id*.

Dr. Kakkar examined Mr. Taylor on April 21, 2015. (Ex. 1 at 7.) Mr. Taylor discussed the work accident with Dr. Kakkar and identified the date of injury as March 10, 2015. *Id*. Dr. Kakkar diagnosed Mr. Taylor with a right-knee sprain/strain. (Ex. 1 at 8.) In Dr. Kakkar's Patient Visit Summary, he did not mark whether the injury was work-related, but hand-wrote the following: "Pending. Reviewing medical information." (Ex. 1 at 6.) He allowed Mr. Taylor to return to work "as tolerated." *Id*.

On April 21, 2015, Dr. Kakkar prepared an email entitled, "Determination of Work Relatedness." (Ex. 1 at 5.) He found as follows:

> Based on my medical evaluation, review of the clinic notes, and utilizing the new worker compensation laws of injury determination which apply to injuries occurring after July 1, 2014, I don't attribute to the work place contributing more than 50% to Mr. Brandon Taylor's current right knee symptoms. There was a work-related event on 3/10/15, which prompted Mr. Taylor to be evaluated by an orthopedist for his right knee pain. However, the MRI done later on Mr. Taylor's right knee indicates that he has patellar alta, and mild chronic changes of the proximal patellar tendon. It is probable that Mr. Taylor had a low grade right knee sprain initially, but that is not the primary contributor to his current right knee symptoms. He continues to have right knee pain close to seven weeks out from his initial work event, and physiologically a right knee sprain with no acute ligament tear is expected to resolve in that time frame. He even had 12 PT sessions in the interim, which point towards the fact that his current pain is being generated by chronic changes of his knee. It is my opinion, therefore, that in isolation, the work event is not the major contributing factor to his current right knee symptoms.

*Id.*

Dr. Fowler examined Mr. Taylor on April 21, 2015. (Ex. 1 at 38.) He

recommended continuing physical therapy and anti-inflammatories, while limiting Mr. Taylor to "sedentary work only until follow-up appointment in about three weeks." (Ex. 1 at 40.) Upon Mr. Taylor's return visit on May 13, 2015, Dr. Fowler injected the injured right knee. (Ex. 1 at 43.) He added that he "discussed the case with Dr. [Timothy] Jenkins, and we will try [the injection] first and try arthroscopic surgery if [the injection] does not give him some improvement." *Id.*

On May 14, 2015, TEC determined it could no longer accommodate Mr. Taylor's work restrictions. (Ex. 2 at 2.) Dr. Fowler completed FMLA paperwork for Mr. Taylor on May 15, 2015. (Ex. 1 at 44.) Among his findings, Dr. Fowler stated Mr. Taylor's condition was not due to a work-related injury. *Id.* He added that Mr. Taylor "was not given work restrictions until 4/21/15. Was not getting better, and needed rest to help healing time."

Dr. Jenkins evaluated Mr. Taylor on May 27, 2015. (Ex. 1 at 49.) Mr. Taylor continued to experience pain in his knee, as the injection only helped briefly. (Ex. 1 at 51.) Dr. Jenkins stated Mr. Taylor "relates today that he had no knee problems prior to his injury at work." *Id.* This statement from Dr. Jenkins is the first reference in the Watauga medical records to a work-related cause of Mr. Taylor's right-knee condition. Dr. Jenkins recommended a "knee arthroscopy diagnostic [sic] with synovectomy and possible meniscectomy as necessary." *Id.* On June 9, 2015, Dr. Jenkins performed a right-knee plica excision surgery on Mr. Taylor's right knee. (Ex. 1 at 52.) Mr. Taylor has since returned to full-duty work at TEC.

On July 4, 2015, Dr. Jenkins responded to a questionnaire submitted by Mr. Taylor's attorney, which asked, "Is it your opinion, within a reasonable degree of medical certainty, that Mr. Taylor's fall on March 10, 2015, directly resulted in his injury and existing surgery?" Dr. Jenkins responded by checking the answer, "Yes." (Ex. 1 at 148.)

TEC filed its response to the PBD on April 30, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed the DCN on May 29, 2015. Mr. Taylor filed an REH on July 8, 2015.

**Mr. Taylor's Contentions**

Mr. Taylor contends he suffered an injury to his right knee as a result of a work-related fall on March 10, 2015. Mr. Taylor argues that, when he repeatedly told his superiors that his knee remained sore, TEC should have provided him with a panel of physicians instead of sending him to the on-site medical providers. When it did not, Mr. Taylor asserts he acted reasonably when he sought treatment at Watauga. Mr. Taylor requests the Court find his claim compensable and hold TEC liable for his past treatment at Watauga, and any on-going reasonable, necessary treatment he may require for his work injury. He also asks that the Court establish Dr. Jenkins his authorized treating

physician.

## TEC's Contentions

TEC questions whether Mr. Taylor's right-knee condition arose from the alleged work accident of March 10, 2015. In support of its position, TEC points out the Watauga medical records reference a date of injury of March 9, 2015, and contain notations the injury was not work-related. Moreover, Mr. Taylor relied on his personal health insurance to pay for this treatment at Watauga, which TEC asserts also places causation into question. TEC additionally argues it repeatedly asked Mr. Taylor whether he required further medical treatment apart from the on-site medical care, and each time, Mr. Taylor refused. TEC asserts Mr. Taylor refused the offer of treatment, because he was treating at Watauga, while keeping that information from TEC. TEC argues Mr. Taylor did not give it an opportunity to provide a physician panel until he filed the PBD, in response to which TEC immediately provided a panel.

TEC relies on Tennessee Code Annotated section 50-6-102(13)(E) (2014) and the opinion of Mr. Taylor's panel-selected physician, Dr. Kakkar, who determined Mr. Taylor's work did not contribute more than 50% to his right-knee condition. TEC points out that, according to the referenced statute, the opinion of the panel-selected physician is presumed correct on the issue of causation. It argues the balance of the medical information, including Dr. Jenkins' mere checking of a "Yes" response, is insufficient to rebut that presumption. TEC asks the Court to deny Mr. Taylor's request for workers' compensation benefits.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party, but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

Whether Mr. Taylor's right-knee condition occurred as the result of an unknown cause on March 9, 2015, or as the result of the alleged work accident the following day,

remains unresolved. TEC did not provide Mr. Taylor with a panel of physician upon his assertion of a work injury on March 10, 2015, but supplied him with on-site medical care. TEC repeatedly inquired as to the status of Mr. Taylor's condition, and asked him whether he required treatment beyond on-site medical. Mr. Taylor responded he did not require further treatment at the same time he was treating at Watauga Orthopedics, unbeknown to TEC. Mr. Taylor filed a PBD with the Bureau on April 14, 2015, requesting medical treatment. TEC promptly responded with a panel of physicians, from which Mr. Taylor selected Dr. Kakkar on April 16, 2015. Dr. Kakkar determined Mr. Taylor's alleged work accident of March 10, 2015, did not contribute more than 50% to his right-knee condition. Dr. Jenkins, the unauthorized physician who performed surgery on Mr. Taylor's injured right knee, determined, "Mr. Taylor's fall on March 10, 2015, directly resulted in his injury and existing surgery." Following surgery, Mr. Taylor returned to work for TEC at full duty.

*Application of Law to Facts*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if it is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence and shall not include the aggravation of a preexisting disease, condition or ailment, unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment[.] *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The panel-selected physician in this case, Dr. Kakkar, concluded the work incident of March 10, 2015, has not contributed more than 50% to the cause of Mr. Taylor's right-knee condition. Pursuant to Tennessee Code Annotated section 50-6-102(13)(E) (2014), "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation, but his presumption shall be rebuttable by a preponderance of the evidence."

Dr. Kakkar provided a detailed explanation to support his opinion against a work-related cause. The primary medical evidence Mr. Taylor presented to attempt a rebuttal of Dr. Kakkar's finding against work-relatedness is the July 4, 2015 opinion of Dr. Jenkins. Dr. Jenkins did not set out an explanation of his conclusion. Rather, he simply checked "Yes" in response to Mr. Taylor's attorney's question regarding cause. The Court notes some defects in the question presented to Dr. Jenkins. Mr. Taylor's "fall" is not described

7

as work-related. Dr. Jenkins is not asked to consider all causes or to opine that a work accident contributed more than 50% in causing Mr. Taylor's injury, as the above-referenced statute requires. The Court determines Dr. Jenkins' opinion on causation is insufficient to rebut Dr. Kakkar's assessment.

The balance of the Watauga medical records is also insufficient to rebut Dr. Kakkar's statement on causation. The records repeatedly reference a date of injury of March 9, 2015. While it is possible that the date of injury was entered erroneously, it is equally possible that Mr. Taylor communicated a different date of injury to the Watauga providers. Also, the medical records consistently record that Mr. Taylor's condition was not a work-related injury. Dr. Fowler repeated this fact in the FMLA form he completed for Mr. Taylor. Dr. Jenkins' notation on May 27, 2015, that Mr. Taylor "relates today that he had no knee problems prior to his injury at work," constituted the first reference to a work-related injury in the Watauga medical records. No further explanation followed.

Based on the information presently available, the Court finds Mr. Taylor has not presented sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. In light of the insufficient medical proof regarding causation, the issues of whether the parties acted appropriately when Mr. Taylor declined TEC's offer of treatment beyond on-site medical, and TEC failed to provide a panel of physicians upon Mr. Taylor's expressed desire for treatment, are moot. At this stage in the proceedings, the Court denies Mr. Taylor's request for additional medical benefits.

**IT IS, THEREFORE, ORDERED as follows:**

1.  Mr. Taylor's request for medical treatment is denied.

2.  This matter is set for a Scheduling Hearing on October 13, 2015, at 3:30 p.m. Eastern Time.

ENTERED this the 31st day of August, 2015.

**Judge Brian K. Addington**
**Court of Workers' Compensation**

Initial (Scheduling) Hearing:

An Initial Hearing has been set with **Judge Addington, Court of Workers'**

**Compensation Claims. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **<u>filing fee in the amount of $75.00.</u>** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited

Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Medical Benefits was sent to the following recipients by the following methods of service on this the 31st day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| David Miller, Esq. | | | X | dmillerlaw@embarqmail.com |
| Bradley Griffith, Esq. | | | X | bgriffith@lawyerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov